## THE CITY OF LAREDO v. RAYMOND MARTIN ET AL.

1. JURISDICTION—INJUNCTION.—Under the Constitution of 1876 and the laws in force, a writ of injunction not being a process necessary to enforce the jurisdiction of the Supreme Court, could not be issued by that tribunal, as an original writ, to restrain a party litigant during the pendency of an appeal.

2. JURISDICTION.—The jurisdiction of the Supreme Court being appellate only, it has not been invested by the Constitution with such general powers as would enable it to protect parties litigant from damage during the pendency of an appeal.

3. APPEALS—INTERLOCUTORY JUDGMENTS—JURISDICTION.—Though the Constitution provides that appeals may be allowed from interlocutory judgments of the District Court in such cases and under such regulations as may be provided by law, no appeal lies from the action of a district judge refusing an application for injunction, (if the same could be regarded as an interlocutory judgment,) in the absence of a statute regulating the proceeding.

[The foregoing was announced in an opinion on a motion for injunction, delivered January 17, 1878.]

OPINION BY CHIEF JUSTICE MOORE.

4. FRANCHISE—PRESCRIPTION.—The evidence showed that the city of Laredo had maintained a ferry across the Rio Grande for a time beyond the memory of living men : *Held,* That it would, in the absence of other evidence, establish the franchise of a ferry by prescription.

5. FRANCHISE—FERRY.—The right to establish a ferry was conferred on the city of Laredo prior to 1780, in the "Vicita-General," at the foundation of the city, under which the city established and operated a ferry continuously : *Held,* That the right of the city to maintain and control the ferry was not abrogated or annuled by the Constitution and laws when its inhabitants came under the government of Texas.

6. SAME.—While the power of the State to divest a city of its franchise to operate a ferry obtained under the laws of the former government might not be disputed, it will not be held to have done so by implication, but it must clearly appear that it was the purpose and intent of the State to divest the city of the franchise, before it will be held to have done so.

7. CONSTRUCTION OF STATUTES.—A general law does not repeal a special law by implication, though both relate to the same subject-matter.

APPEAL from Webb. Tried below before the Hon. Edward Daugherty.

Suit by the city of Laredo, brought April 18, 1876, to enjoin defendants Martin, Macdonnell, and Hall from maintaining a ferry between the city of Laredo, Texas, and the town of New Laredo, Mexico. The original petition alleged that appellant is the owner of the land on which defendants have established their ferry, being the land, about two square leagues, which was granted to Laredo by the King of Spain as "exidos," and confirmed by the State of Texas; that by virtue of ownership of the land, and of prescriptive and peaceable enjoyment of the ferry franchise for more than forty years, and of the powers granted in the act of incorporation of the city of January 28, 1848, amended February 9, 1850, and of the general laws of the State relating to ferries, the appellant has established and maintained ferries within the limits of those leagues; that the city has established and maintained a ferry between said Laredo and New Laredo, which it has leased and for which it receives a rent of $3,000 annually; that defendants have, at same place, set up a claim to a ferry privilege, and have attempted to oust appellant, and to oust and exclude the city's lessees from the use and possession of said ferry; that defendants have there established a ferry and carry freights and passengers and collect fees, &c., which they appropriate, to the amount of $25 per day; that defendants threaten to dispossess appellant and its lessees, and are prosecuting vexatious suits against them; that thereby appellant is obstructed in the use of its franchise and injured daily to the sum of $25, and its lessees prevented from paying their rent; that appellant had been thereby damaged $10,000. Appellant prayed for provisional and perpetual injunction. This petition was sworn to by the mayor.

The injunction was refused and appellant excepted.

Defendants, on October 9, 1876, filed a plea in abatement, that the acts charged were done, if done at all, by the Laredo Ferry Company, of which Hall was president and Martin the secretary, &c. This plea was sustained and appellant ex-

cepted; thereupon appellant amended by making the ferry company a defendant.

Defendants, on February 3, 1877, answered (1) by general denial, and (2) that the Laredo Ferry Company was duly organized under the act of the Legislature of April 23, 1874; that by virtue of its charter under that act it put in operation its ferry from Laredo to New Laredo; that it was duly licensed by the County Court, and was, under the laws of the State, solely entitled to the use and enjoyment of the ferry franchise for three miles above and below that point for a period of twenty years; that the ferry company was the owner of the land on the Texas side where its ferry is situated, and, under that ownership and its charter and the laws of the State, it is entitled to a ferry; that defendants Martin, Macdonnell, and Hall are stockholders in the company, Hall being president; that the city never had a grant of the ferry franchise from Texas or other competent authority; that the power granted in the city charter from the State had been withdrawn and lodged in the County Court, and that by the said act of April 23, 1874, the ferry franchise had been granted to the company by reason of its organization, &c., and finally, that the defendants pleaded in reconvention their right to ferry.

On April 10, 1877, the city amended, by alleging that at the time of the grant of the land made to the city by the King of Spain, on the 25th of June, 1767, the ferry privilege was also, by the same act of concession, granted the city for the use and benefit of the inhabitants, and that since said concession the city had continued, for the use and benefit of such inhabitants, to enjoy the fees, fruits, and profits thereof.

On April 11, 1877, the city demurred specially to the answer of defendants, that the defense of incorporation under the act of April 23, 1874, was an insufficient defense to this action; that the defense setting up ownership of land in defendants, as authorizing them to have a ferry, was also insufficient as a defense, &c. These demurrers were overruled by the court, and the city excepted.

Afterwards, and before the trial, the city, on April 13, again amended, and charged that the sale of land on the river to Macdonnell, which defendants had set up in their answer as authorizing them to establish a ferry, was made, if at all, by the mayor (Benavides) without authority from the city; that the mayor was ignorant of the contents of the title to Macdonnell, and that this title being in the English language, which is not understood by the mayor, he signed under the belief that it related to city lots within that part of the city lands which had been laid off into town lots by authority of the city, but that said title pretends to convey land not authorized by the city to be laid off into lots and sold, &c.

To this defendants replied, on the same day, that the city had conveyed the land to Macdonnell, and he to the ferry company; that the conveyance to Macdonnell was fully authorized, and that it had been ratified by the city; that it was true said conveyance was in the English language, and if the mayor did not understand it, it was not defendants' fault; that the mayor did know the situation of the land conveyed and the contents of the conveyance, &c.

There were other pleadings and demurrers immaterial to the questions decided.

At the April Term, 1877, the case was submitted to the court, a jury being waived. The court gave judgment for defendants.

Plaintiff introduced in evidence the following section of the city charter of Laredo:

"SECTION 5. Be it further enacted, That the said mayor and aldermen shall be invested with the following powers, viz.: *   *   *   Thirdly. They shall have authority to establish ferries; fix the rates, fees, and rents of the same,   *   *   * and sell and dispose of any property belonging to the city, for the benefit thereof."

It was admitted that plaintiff owned the land claimed in petition on the 16th of October, 1875.

Plaintiff next proved, by Santos Benavides, that since about

forty-four years ago the city of Laredo had owned the ferry, the proceeds being used for town purposes; that for more than fifty years the city has continued in possession of the ferry; that in "1824 one Lazaro Benavides had control of the ferry, under an agreement with the people of Laredo, by which they were to have free passage in his boat until they could get a boat, and he got the fare paid by strangers passing."

Refugio Benavides testified that since 1842 the town owned the ferry; that in 1859 he was mayor, rented the ferry, and citizens who belonged to Laredo paid no fare passing over, but strangers paid; that he was mayor last year and the year before (1875 and 1876); that in 1875 the rent was over $500, and that year the ferry was not free to the people of Laredo; that lessee, of his own will, agreed to pass citizens on Sundays; that last year the rent was about $2,900, paid in advance.

Cristobal Benavides says that he rented the ferry in 1874 and 1875; that all people paid passage—citizens of Laredo as well as everybody else.

Plaintiff next introduced a translation by Major Felix A. Blucher, made in the year 1858, of a Spanish document known as the "Vicita-General," the said document being made on the 25th day of June, 1767. The portion of this document pertinent to this case is as follows:

"And hereto [erection of a church] may be applied also, for the present, the money collected at the canoe ferry opposite the town, which money shall be safely deposited, and which ferry we hereby do declare common property of the town, for which reason the householders and inhabitants of the same shall not pay any charges at the crossing, but be responsible for keeping the same in order, and for strangers passing the river we fix the charges at two reals per head, and at one real for each package of freight. After this work [the church] has been completed, the proceeds shall be deposited for some other use necessary or convenient for the community, but not to be distributed without the unanimous consent of the justice, councilmen, and procurator-general, all of which regulations they

shall observe with the strictness required in matters of such importance, for the benefit and advancement of the place, without deviating therefrom in the most trifling matter."

Appellees then put in evidence—

1. Its original articles of incorporation under act of the Legislature of 1874.

2. Its amended articles of incorporation.

3. Conveyance from Refugio Benavides, mayor of the city of Laredo, to C. M. Macdonnell of the land claimed by the ferry company.

4. Deed from Macdonnell, of same land, to the ferry company.

5. Proceedings and order of the County Court establishing defendants' ferry, receipt for the tax imposed by the county, and license to run its ferry.

At the January Term, 1878, of this court, the city of Laredo applied to the Supreme Court, in which this cause was then pending, for a "temporary injunction" to restrain appellees from ferrying, &c., as asked for in the original petition, and that the same should be continued in force until the final decision on the appeal. On that motion the following opinion was delivered by Roberts, then chief justice:

Roberts, Chief Justice.—The appellant, being plaintiff below, applied to the district judge for an injunction, which was refused, and plaintiff filed a bill of exceptions to such refusal. The filing of the exceptions bears the same date as the filing of the petition, to wit, 18th of April, 1876; but the entry of it in the record does not show that it was during a term of the court the petition was filed and the exceptions taken. Upon a trial of the case in April, 1877, a judgment was rendered, against the plaintiff, that the said corporation take nothing by the suit, and the case is brought to this term of the Supreme Court by appeal.

The appellant makes this motion for a "temporary or provisional" injunction to be issued by this court to restrain the

defendants, as prayed for in the sworn petition, until the final determination of the appeal, and refers to the pleadings and evidence in the record in support of said motion.

We are of opinion that this motion cannot be granted, because a writ of injunction in the case is not necessary to enforce the jurisdiction of this court, and if it could be so held, no regulations for issuing it by this court have been prescribed by law, as required by section 3 of article 5 of the Constitution of 1876. Its jurisdiction being appellate only, the court is not invested by the Constitution and laws with such general powers as would enable it to protect the parties from damage during the pendency of the appeal. The issuing an injunction for such a purpose would be the exercise of original, and not of appellate, jurisdiction in the case. It would be doing that which, it is contended, the District Court should have done before the trial.

If the district judge had granted it, and then dissolved it by an interlocutory order, this court could not have entertained an appeal from that order, without a law having been passed providing for it. (Const., art. 5, sec. 3.) The Legislature has not, as yet, seen proper to give this court power to control or correct the action of the District Court in relation to injunctions, even by an appeal from an interlocutory order dissolving it.

It is provided in the Constitution that "appeals may be allowed from interlocutory judgments of the District Courts in such cases and under such regulations as may be provided by law." If this refusal of the district judge to grant the injunction could be held to be an interlocutory judgment, this court is debarred by the Constitution from correcting any errors in it by appeal, in the absence of a law permitting and regulating it. It could not, then, have been contemplated to give this court power to issue an injunction, in the first instance, to prevent damage to the parties during the pendency of the suit.

The statute of 1846 provides that injunctions granted by any judge of the Supreme Court or the District Court to stay proceedings, &c., shall be returnable to the county where the suit

is pending. (Paschal's Dig., art. 3932.) This statute takes for granted that an injunction may be granted by a judge of the Supreme Court, the same as a district judge, in a suit to be thereafter determined in the District Court. That was unquestionably the exercise of original, and not of appellate, jurisdiction in a case. It is unnecessary to consider how far that was in violation of the Constitution of 1845; for it provided for a stay of proceedings in the District Court by an injunction, to be acted on by the District Court, in dissolving or perpetuating it, the same as though it had been granted by a district judge.

That is not this case. If that statute was ever in force in reference to the power conferred on a judge of the Supreme Court, it certainly is repugnant to the provisions of the Constitution of 1876, which grants to the Supreme Court the right to issue only such writs as may be necessary to enforce its own jurisdiction, when there shall be a law passed regulating the mode of doing it.

It is a sufficient answer to this motion, to say that the injunction sought to be issued is not a writ necessary to enforce the jurisdiction of this court. It is therefore overruled.

MOTION OVERRULED.

[Opinion delivered January 17, 1878.]

*Edmund J. Davis,* for appellant.

I. When a *prima-facie* right is shown, and irreparable damage is likely to occur from delay, it is the duty of the judge, under proper security against damage to the opposite party, to issue a writ of injunction. (Butt *v.* Colbert, 24 Tex., 356; Daniell's Ch. Prac., pp. 388, 1628, 1629; Kerr's Inj. in Eq., secs. 135, 136; Waterman's Eden on Inj., secs. 271–274; Hill. on Inj., sec. 243.)

II. The court erred in sustaining defendants' plea in abatement, filed October 9, 1876. All torts are joint and several. The ferry company may have been liable for a tort, but the individuals composing it may also be held liable therefor in

their individual capacity. (Hill. on Rem. for Torts, sec. 519; Angell & Ames on Corp., secs. 385–389; Add. on Law of Torts, sec. 280.)

III. The city having established its right to exclusive owner-ship of the ferry, and the fact of infringement of this right by defendants, the license by the County Court, and the self-incorporation by defendants under the act of April 23, 1874, even though the deed to Macdonnell should be held binding on the city, gave defendants no legal right to establish or con-tinue their ferry. (Paschal's Dig., art. 3841; Ogden *v.* Lund, 11 Tex., 690; Dunlap *v.* Yoakum, 18 Tex., 584; Williams *v.* Davidson, 43 Tex., 1; Dartmouth College *v.* Woodward, 4 Wheat., 518; Proprietors of Charles River Bridge Co. *v.* Pro-prietors of Warren Bridge, 11 Pet., 420; East Hartford *v.* Hart-ford Bridge Co., 10 How., 511; Binghamton Bridge, 3 Wall., 52; 2 Hill. on Real Prop., sec. 41.)

IV. Neither the general act of the Legislature of January 23, 1850, relating to ferries, nor the act of April 23, 1874, concerning private corporations, repealed the power given the city of Laredo by the act of incorporation of January 28, 1848, to regulate its ferries, unless they repealed it by implication, which is a construction that will not be favored in any case. (Neill *v.* Keese, 5 Tex., 33; Bryan *v.* Sandberg, 5 Tex., 424; 8 Tex., 62.)

V. The ferry privilege of the city of Laredo, or of its peo-ple, was a vested right that the Legislature could not take away, even if it had intended to do so. (Const., art. 12, sec. 7, title PRIVATE CORPORATIONS; Binghamton Bridge, 3 Wall, 52; 29 Vt., 12; 9 Cranch, 43; Id., 292; 10 Barb., 222; 2 Wheat., 663, 698; 2 Kent's Comm., 315, note; Cooley's Const. Lim., 238, 239, and note 3 to p. 238; 13 Smedes & Mar., 645.)

*William H. Russell,* for appellees.

I. The claim of the city of Laredo to the exclusive use of the ferry franchise, or any interest therein, by reason of the grant

or document known as the "Vicita-General," cannot be maintained, because such document imposes conditions upon the town of Laredo which do not appear to have been complied with.

The "document" only pretends to grant a "canoe ferry," and under certain conditions, some of which are, that the revenue derived from passing strangers and freight shall be devoted to a certain object; residents must pass free, but must keep the ferry in order; and it is required that all must be done "without deviating therefrom in the slightest particular."

The evidence discloses that as far back as 1824 the revenue arising from crossing strangers was given to an individual for the space of three years, and not devoted to the purpose of the grant; it was not free for the "inhabitants and householders of the town."

II. When Laredo became a part of the State of Texas, this grant to the people of the town was entirely subject to legislative control, and could be modified, confirmed, or revoked at the pleasure of the Legislature.

The charter granted by the Legislature of the State January 28, 1848, to the town of Laredo, soon after Texas had extended its jurisdiction over that place, embraces all the powers, privileges, and grants which it can claim as the city of Laredo.

Does the charter confirm a preëxisting right to the ferry franchise, or does it grant the right? If it does either, it must be in express terms.

There is no pretense that the State of Texas confirmed any preëxisting right, though it is claimed that the State did confirm the claim to land. Then the title, if any, to the ferry franchise must be found in the charter.

An examination of the charter shows that all therein relating to ferries is as follows:

"SEC. 5. Be it further enacted, That the mayor and aldermen shall be invested with the following powers, viz.: *    *    *
"Thirdly. They shall have authority to establish ferries;  *    *
fix the rates, fees, and rents of the same."

This is merely a legislative power delegated to the council, and is no more a grant of property than the authority to levy taxes and assess fines against offenders.

III. The granting of the power to establish ferries, in the city charter, cannot be held as a grant of a franchise, any more than the granting of such power to the County Courts under the act of 1850 can be so considered; and it has never been contended under this act that ferries are the property of the several counties.

The act of 1850, (Paschal's Dig., art. 3841,) if it does not abrogate and repeal the power to establish ferries given in the city charter, certainly subjects any one for whom the city may establish a ferry, or the city itself if it keeps its own ferry, to the conditions of the act, (Paschal's Dig., arts. 3842, 3846, 3848,) and renders useless such power unless the terms of the act are complied with. If this be so, the city cannot claim an exclusive right, nor any right, save under the authority and discretion of the County Court.

IV. If all right or power of the city to establish ferries has not been withdrawn, it cannot claim an exclusive right, as the same is not by express words or necessary inference plainly and clearly given by the Legislature. The power to a municipality to establish and regulate ferries within its limits does not give it an exclusive power. (Dill. on Mun. Corp., 78; Harrison *v.* The State, 9 Mo., 530.)

V. The County Court, for the purpose of establishing ferries, is a special tribunal, and the order of such tribunals cannot be reviewed. (Arberry *v.* Beavers, 6 Tex., 470; Timmins *v.* Lacy, 30 Tex., 130.)

Until the act of 1850 there was no legislation making provision for ferries on rivers forming a boundary of the State. This act provides for the County Court to establish such ferries. "It provides for a system of reciprocity, and this is all that can be done in such cases by legislation. Any attempt to give a franchise beyond the jurisdiction of the State would be void." (Ogden *v.* Lund, 11 Tex., 690.)

The charter of the city contains no such provision for reciprocity as the act of 1850. (Paschal's Dig., art. 3843.)

The incorporation of a town or city does not exclude within its boundaries the operation of the general laws; (43 Tex., 34;) therefore the act of 1850 was in operation in the city of Laredo, and the defendants' right to the ferry must be sustained.

Ownership of land does not, of itself, confer a franchise. (43 Tex., 32; Paschal's Dig., art. 3841.)

MOORE, CHIEF JUSTICE.—This suit was brought by appellant to enjoin appellees from maintaining a ferry across the Rio Grande River in front of the city of Laredo, which appellees had established, and claimed to be entitled to maintain, under a license granted them by the County Court of Webb county, as riparian owners of a parcel or tract of land, to which they claimed title under a deed alleged to have been executed, October 16, 1875, by Refugio Benavides, mayor of said city, to C. M. Macdonnell, one of the defendants.

In the case of the city of Laredo against C. M. Macdonnell and the Laredo Ferry Company, just decided, it has been held by the court that the mayor had no authority to sell the land claimed by appellees, which is the foundation of their claim to the ferry privilege, for which a license was granted them by the County Court; that said deed should be canceled and annuled, and, in effect, that the land in question belonged to and was the property of the city of Laredo, the appellant in this case.

It is a necessary consequence of this decision that the judgment of the court below, that appellees were entitled to maintain the ferry, is erroneous, and must be reversed. It is proper, however, with a view to avoid further litigation and dispute, that we should announce our conclusions on the objections made to appellant's right to a ferry across the river at the same place, especially as these questions are directly in issue in this case; for although appellees may not have been the owners of the land when they were licensed to establish their

ferry, or the County Court may not have been authorized to license a ferry at the point in question because within the corporate limits of the city of Laredo, still appellant would not be entitled to an injunction against appellees unless they were in some way interfering or obstructing some right or privilege of appellant. It is, therefore, not only proper, but necessary, for us to inquire whether appellant is entitled to the ferry franchise across the river at the point where appellees set up their ferry, and the extent and nature of this franchise.

Without going into details, it is sufficient to say that the evidence satisfactorily shows that a ferry had been maintained by the city, where appellees are now operating their ferry, for a time beyond the memory of living men; that the proof would have been ample to have established the right of the city to the franchise of a ferry by prescription, if this had been its only source or evidence of title. But it is also shown that the right to establish its ferry was conferred upon or granted to the city in the "Vicita-General," at its foundation, more than a century ago. And it is as satisfactorily proved as such a matter could be ordinarily established, that a ferry has been maintained and operated by the city, or under its authority, from that day, without question or dispute, until a ferry license was applied for and obtained from the County Court of Webb county by appellees.

It cannot, then, be denied that appellant was entitled to the franchise of keeping and operating this ferry up to and at the time when the city of Laredo came under the government of Texas. Was the right of the city abrogated or annuled by the Constitution and laws of the State? The exercise of such a franchise is certainly not repugnant to anything in the Constitution, nor necessarily in conflict with anything in our statutes. Admit that ferries are public franchises and subject to legislative control, and that the general policy of the State, when the city of Laredo became subject to the jurisdiction of Texas, was to subject ferries to the control of County Courts: it does not follow that the continued enjoyment of such a

franchise by a city, or even by an individual to whom it had been granted by the preceding government, would be so antagonistic to this general policy as to be divested by it out of such previous grantee. It may be true that a city cannot claim a vested interest or title to a public franchise free from and independent of the right of the State to control, modify, or abrogate it. But while the power of the State to divest the city of this ferry franchise, if it see fit to do so, might not be disputed, (Williams *v.* Davidson, 43 Tex., 35; Hudson *v.* Cuero Land Co., 47 Tex., 56,) yet it will not be held to have been done by mere implication, but it must plainly appear that this was its purpose and intent before it will be held to have done so.

But so far from this having been done in this case, the State, if it did not expressly ratify and confirm the franchise vested in the appellant by the "Vicita-General," certainly conferred upon it a like franchise. The act of the Legislature, incorporating the city of Laredo, approved January 28, 1848, (under which the city is still governed,) gave it the right to establish and regulate ferries, in the following terms:

"SECTION 5. Be it further enacted, That the mayor and aldermen shall be invested with the following powers, viz.:   *   *   * Thirdly. They shall have authority to establish ferries; build levees, wharves, and landings; fix the rates, fees, and rents of the same; establish free schools, erect public buildings for the use of the city, pave and improve the streets, and sell and dispose of any property belonging to the city, for the benefit thereof."

It is insisted by appellees, (but, so far as we can see, without the slightest foundation for such an assumption,) that the authority conferred upon the city by this charter has been subsequently revoked and committed to the County Court. (Paschal's Dig., art. 3841, &c.) The act upon which appellees rely to revoke the power given the city, is the general act to regulate ferries. But there is no allusion in it to the act incorporating the city of Laredo, or to the power conferred by it

upon the mayor and aldermen to establish ferries within its corporate limits. It is too well settled, that a general law does not by implication repeal a special one, although both relate to the same subject-matter.

The judgment is reversed and rendered for appellant, perpetually enjoining appellees as prayed for in appellant's petition.

REVERSED AND RENDERED.

[Opinion delivered February 13, 1880.]