# Supreme Court of Texas

## No. 22-0229

In re Greg Abbott in His Official Capacity as Governor of the
State of Texas; Jaime Masters in Her Official Capacity as
Commissioner of the Department of Family and Protective
Services; and the Texas Department of Family and Protective
Services,

*Relators*

## On Petition for Writ of Mandamus

JUSTICE BLACKLOCK delivered the opinion for a unanimous Court as to Parts I and II. JUSTICE BLAND delivered the opinion of the Court as to Part III, in which Chief Justice Hecht, Justice Lehrmann, Justice Busby, and Justice Huddle joined.

JUSTICE LEHRMANN filed a concurring opinion.

JUSTICE BLACKLOCK filed an opinion dissenting as to Part III, in which Justice Boyd and Justice Devine joined.

JUSTICE YOUNG did not participate in the decision.

On February 18, 2022, the Attorney General issued Opinion No. KP-0401, which concludes that certain "'sex change' procedures and treatments . . . when performed on children, can legally constitute child abuse under several provisions of chapter 261 of the Texas Family Code." Relying on this opinion, the Governor sent a letter to the Commissioner of the Department of Family and Protective Services

(DFPS) expressing his view that "a number of so-called 'sex change' procedures constitute child abuse under existing Texas law." The letter closes with the instruction that "DFPS and all other state agencies must follow the law as explained in OAG Opinion No. KP-0401." DFPS then issued the following statement to the media: "In accordance with Governor Abbott's directive today to Commissioner Masters, we will follow Texas law as explained in Attorney General opinion KP-0401."

This lawsuit followed. The plaintiffs are a married couple who are the parents of a child diagnosed with gender dysphoria and a doctor who treats such children. They sued the Governor, the DFPS Commissioner, and DFPS, challenging the Governor's "directive" and the statement made by DFPS to the media. The plaintiffs contend that DFPS's press statement improperly announces a new agency rule without the notice-and-comment procedure required by law. *See* TEX. GOV'T CODE §§ 2001.023, .029, .033. They also challenge DFPS's authority to investigate their use of medical treatments deemed unlawful by the Governor's letter.

The district court issued a temporary injunction that "restrains the following actions by the Defendants":

> (1) taking any actions against Plaintiffs based on the Governor's directive and DFPS rule, both issued February 22, 2022, as well as Attorney General Paxton's Opinion No. KP-0401 which they reference and incorporate; (2) investigating reports in the State of Texas against any and all persons based solely on alleged child abuse by persons, providers or organizations in facilitating or providing gender-affirming care to transgender minors where the only grounds for the purported abuse or neglect are either the facilitation or provision of gender-affirming medical treatment or the fact that the minors are

2

transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment; (3) prosecuting or referring for prosecution such reports; and (4) imposing reporting requirements on persons in the State of Texas who are aware of others who facilitate or provide gender-affirming care to transgender minors solely based on the fact that the minors are transgender, gender transitioning, or receiving or being prescribed gender-affirming medical treatment.

The State took an interlocutory appeal, which automatically superseded the district court's injunction. *See* TEX. R. APP. P. 29.1(b); TEX. CIV. PRAC. & REM. CODE § 6.001(b). The court of appeals then issued a Rule 29.3 temporary order reinstating the temporary injunction in its entirety. *See* TEX. R. APP. P. 29.3

The State now petitions this Court for a writ of mandamus directing the court of appeals to vacate its Rule 29.3 order. As explained below, we conditionally grant the State's petition as to the portions of the court of appeals' order that purport to have statewide application. The court of appeals lacked any authority under Rule 29.3 to afford relief to nonparties throughout the state. We also conditionally grant relief with respect to the order's injunction against the Governor, as there is no allegation that he is taking, or has authority to take, the enforcement actions the order enjoins. Finally, the Court concludes that the State has not established its entitlement to mandamus relief as to the other parts of the court of appeals' order applicable to the plaintiffs in this case. Mandamus relief is denied as to those parts of the order.

## I.

Neither the courts nor the public can properly assess our government's decisions without first correctly identifying which actors

3

within the government are responsible for those decisions. In litigation, we see this principle reflected in the requirement that plaintiffs who want the courts to pass judgment on the legality of government action must seek relief against the particular government official or agency responsible for the challenged action. In politics, the people of Texas— by whose authority and for whose benefit our government exists— cannot allocate political responsibility for the government's decisions unless they understand which government officials have the lawful authority to make or to change those decisions.

Although this case comes to us in its early stages, it appears already to have been infected by a misapprehension of the proper roles played by the various government actors involved. Before resolving the State's mandamus petition, we first must clarify who within the government is responsible for the decisions complained of by the plaintiffs. We address this preliminary, but essential, question without regard to the merits of the underlying case.

Unlike the federal constitution, the Texas Constitution does not vest the executive power solely in one chief executive. Instead, the executive power is spread across several distinct elected offices, and the Legislature has over the years created a wide variety of state agencies— including DFPS—whose animating statutes do not subject their decisions to the Governor's direct control.[1]

---

[1] The Governor frequently appoints these officers, but the state agencies' enabling statutes rarely give the Governor formal control over the officers' decisions once appointed.

The State does not contend in this Court that the Governor's letter formally changed the legal obligations of DFPS, of parents in Texas, or of medical professionals in Texas. Nor does it contend that the Attorney General's opinion did so. Unlike some executive orders of the Governor that are afforded binding legal effect by statute, the Governor's letter cites no legal authority that would empower the Governor to bind state agencies with the instruction contained in the letter's final sentence, and we are directed to none.

Likewise, it is well-settled that an Attorney General opinion interpreting the law cannot alter the pre-existing legal obligations of state agencies or private citizens.[2] *See Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996) (stating Attorney General opinions are "not controlling"). Nor does the Attorney General have any formal legal authority to direct the investigatory decisions of DFPS. In sum, we are directed to no source of law obligating DFPS to base its investigatory decisions on the Governor's letter or the Attorney General's Opinion. The Governor and the Attorney General were certainly well within their

---

[2] AG Opinions have been understood to provide a shield against liability in certain circumstances, and we make no comment in that regard. *See, e.g.*, *Weaver v. Head*, 984 S.W.2d 744, 746 (Tex. App.—Texarkana 1999, no pet.) ("[AG opinions] sometimes become important for use by a public official to avoid personal liability for official acts by a showing of good faith in acting in reliance on an attorney general's opinion."). The pertinent question for now is whether AG Opinions *create* or *change* legal obligations, as opposed to explaining them. They do not.

5

rights to state their legal and policy views on this topic, but DFPS was not compelled by law to follow them.[3]

DFPS's press statement, however, suggests that DFPS may have considered itself bound by either the Governor's letter, the Attorney General's Opinion, or both. Again, nothing before this Court supports the notion that DFPS is so bound. Instead, the Legislature has granted to DFPS, not to the Governor or the Attorney General, the statutory responsibility to "make a prompt and thorough investigation of a report of child abuse or neglect." TEX. FAM. CODE § 261.301(a). And, when deciding whether and how to exercise that authority, DFPS—not the Governor or the Attorney General—naturally must assess whether a report it receives is actually "a report of child abuse or neglect." *Id.* Of course, the Legislature, by statute, may constrain DFPS's discretion in this regard (subject to constitutional limitations),[4] but neither the Governor nor the Attorney General has statutory authority to directly control DFPS's investigatory decisions. They have every right to express their views on DFPS's decisions and to seek, within the law, to influence those decisions—but DFPS alone bears legal responsibility for its decisions.

---

[3] We are not blind to the many informal mechanisms by which a governor or an attorney general may validly seek to influence the behavior of state agencies as part of the normal give-and-take between departments of state government. Ultimately, however, one department or another has the final say, and a court must correctly identify the true decision-maker before assessing the decision.

[4] During the most recent regular session, the Legislature considered, but did not pass, proposed legislation that would have amended the Family Code to add certain treatments for gender dysphoria to the definition of "child abuse." Tex. S.B. 1646, 87th Leg., R.S. (2021).

6

The central role played by courts in the child-welfare system should also be clarified. DFPS's preliminary authority to *investigate* allegations does not entail the ultimate authority to *interfere* with parents' decisions about their children, decisions which enjoy some measure of constitutional protection whether the government agrees with them or not. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Before it can impose consequences on a family beyond an investigation, DFPS generally must seek court orders authorizing it to intervene.[5] *See generally* TEX. FAM. CODE § 262.001 *et seq.* In other words, DFPS does not need permission from courts to *investigate*, but it needs permission from courts to *take action* on the basis of an investigation. At that stage, before issuing orders, a court would have to decide whether the child abuse investigated and alleged by DFPS qualifies as such under Texas law. The normal judicial role in this process is to act as the gatekeeper against unlawful interference in the parent–child relationship, not to act as overseer of DFPS's initial, executive-branch decision to investigate whether allegations of abuse may justify the pursuit of court orders.

With these preliminary observations in mind, we turn to the State's petition for writ of mandamus.

## II.

The State's petition seeks relief from an order issued by the court of appeals under the authority afforded to that court by Rule 29.3 of the

---

[5] DFPS has limited authority in extreme, emergency situations to take temporary custody of children before obtaining a court order. *See* TEX. FAM. CODE § 262.104. The plaintiffs do not allege that they face a credible threat of such action.

7

Texas Rules of Appellate Procedure. "Mandamus relief is appropriate when a petitioner demonstrates a clear abuse of discretion and has no adequate remedy by appeal." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 91 (Tex. 2019). A court clearly abuses its discretion when it makes an error of law. *Id.*

As noted above, the trial court's temporary injunction was superseded by operation of law when the State appealed it. *See* TEX. R. APP. P. 29.1(b); TEX. CIV. PRAC. & REM. CODE § 6.001(b). However, Rule 29.3 authorizes courts of appeals, during an interlocutory appeal, to "make any temporary orders necessary to preserve the parties' rights until disposition of the appeal." TEX. R. APP. P. 29.3. We have recognized that, depending on the circumstances, this rule may authorize a court of appeals "to preserve the status quo and prevent irreparable harm" to the parties during the pendency of the appeal, even if the temporary order has "the same practical effect as denying supersedeas of the trial court's injunction." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 680 (Tex. 2021); *see also Geomet*, 578 S.W.3d at 90.[6]

---

[6] The State contends that, under an 1880 decision of this Court, courts of appeals exercising appellate jurisdiction lack any authority to "protect the parties from damage during the pendency of the appeal." *City of Laredo v. Martin*, 52 Tex. 548, 554 (1880). As we observed in *Geomet*, in which no party raised *Martin*, such a line of argument "amounts to a constitutional attack on Rule 29.3." 578 S.W.3d at 89–90. We further noted in *Geomet* that a state of affairs in which no court can protect parties' rights during an interlocutory appeal would raise constitutional questions about the automatic stay of trial court proceedings afforded by section 51.014(b) of the Civil Practice and Remedies Code. *Id*. at 90. Likewise, the limitation on appellate courts' Rule 29.3 authority suggested by the State would raise constitutional questions about the State's statutory right to automatically supersede injunctions on appeal. We do not purport to resolve any of these questions in this expedited mandamus posture.

8

The text of Rule 29.3 plainly limits the scope of the available relief to that which is necessary to preserve *the parties'* rights. Part (1) of the court of appeals' order protects only the plaintiffs and therefore does not, in terms of its scope, exceed the appellate court's Rule 29.3 power. However, parts (2), (3), and (4) of the order exceed the court of appeals' authority because they apply broadly to "any and all persons" who are not parties to this lawsuit. This affords relief not to the parties, but to "any and all" nonparties who may find themselves in circumstances similar to the plaintiffs'. Rule 29.3 does not provide authority for such an order.

The plaintiffs respond that the nature of their Administrative Procedure Act challenge to DFPS's press statement expands the relief that should be available under Rule 29.3. They contend that a district court could enjoin an invalid rule's application on a statewide basis, so it follows that a court of appeals must have the same authority. Whether or not the plaintiffs are right about the scope of a district court's power to enjoin an administrative rule, that question is beside the point. The issue is the court of appeals' power under Rule 29.3, which provides only the limited authority to "preserve the parties' rights," not the general authority to reinstate temporary injunctions of any nature. The plaintiffs make no effort to grapple with the party-specific language of Rule 29.3, which forecloses their position regardless of the nature of their claims in the district court. Just as the Governor lacks authority to issue a binding "directive" to DFPS, the court of appeals lacks authority to afford statewide relief to nonparties.

The court of appeals abused its discretion by using Rule 29.3 to issue a statewide order. The State lacks an adequate appellate remedy by which to avoid this invalid aspect of the court of appeals' order. Mandamus relief is appropriate as to the order's application to "any and all" nonparties.[7]

## III.

The remaining question is whether the State is entitled to mandamus relief from the court of appeals' order as it applies to the plaintiffs in this case. As discussed in Part II above, we have recognized appellate courts' authority to preserve the status quo and prevent irreparable harm to the parties during the pendency of an appeal. *See also In re State*, __ S.W.3d __, 2021 WL 4785741, at *1 (Tex. Oct. 14, 2021) (per curiam) (granting stay to preserve status quo without comment on merits of request for temporary injunction). But none of the State's argument in this Court focuses on the circumstances of this child. Without commenting on the merits of any party's claims or defenses, the Court denies mandamus relief from the order's application insofar as it governs conduct among these parties while the appeal proceeds, with one exception. Ordering the Governor not to "investigat[e] reports" of abuse, "prosecut[e]" such reports, or "impos[e]

---

[7] We need not address the State's additional arguments for the invalidity of the statewide order. The plaintiffs contend that, even if the order is invalid, the State has an adequate remedy by the appeal of the district court's temporary injunction. But the whole purpose of the State's mandamus petition is to establish its rights during the pendency of the interlocutory appeal. The fact that an improper judicial imposition on the executive branch's prerogatives may only be temporary does not make it any less improper. The State has no adequate remedy, other than mandamus relief, by which to remedy the effects of the court of appeals' order.

reporting requirements" was improper because, as we hold above, the Governor does not have authority to do any of those things with respect to these plaintiffs. Nor have the plaintiffs alleged that the Governor is engaging or threatening to engage in such conduct. Because the Governor lacks the authority to investigate or prosecute the plaintiffs, and no party alleges that he has threatened to do so, an order prohibiting him from engaging in such conduct has no support in this record. In all other respects, the Court denies mandamus relief as to the order's application to the defendants' conduct with respect to these plaintiffs, while the appeal is pending.[8]

With relief partially denied and partially granted, we are left with (1) a court of appeals order that protects only the plaintiffs as against DFPS and its Commissioner's actions, and not as against the Governor; (2) a nonbinding Attorney General Opinion; (3) a nonbinding statement by the Governor; and (4) a state agency, DFPS, with the same discretion

---

[8] We express no opinion on the pending interlocutory appeal of the district court's temporary injunction or on the merits of the plaintiffs' underlying claims seeking various forms of declaratory and injunctive relief against the Governor, the Commissioner, and DFPS, which remain pending in the district court.

11

to investigate reports of child abuse that it had before issuance of OAG Opinion No. KP-0401 and the Governor's letter.[9]

      James D. Blacklock
      Justice

      Jane N. Bland
      Justice

**OPINION DELIVERED:** May 13, 2022

---

[9] The State's Emergency Motion for Temporary Relief, which accompanied its mandamus petition, is dismissed as moot.

12